COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
  
 EDUARDO TORRES,
  
                            
 Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                            
 Appellee.
 
 
  
   '
     
   '
     
   '
     
   '
     
   '
     
  '
 
  
 
 
  
  
                   No. 08-11-00151-CR
  
 Appeal from the
  
 120th
 Judicial District Court 
  
 of El
 Paso County, Texas 
  
 (TC#20100D02887) 
  
 
 


 

                                                                  O
P I N I O N

Appellant Eduardo
Torres (“Torres”) appeals his convictions for violation of a protective order
and assault.  Torres requests that this Court
reverse the judgment of the trial court and render a judgment of acquittal or
remand his case for a new trial.  Torres
raises three issues:  (1) the trial court
violated Torres’s Sixth Amendment right to confront his accuser by disallowing
proper impeachment; (2) the trial court erred when it gave a jury instruction
that allowed a conviction on a less than unanimous verdict; and (3) Torres’s
due process right to a fair trial was violated by the State’s repeated improper
arguments.  We affirm.

BACKGROUND

On April 22, 2010, Torres was served with an
ex-parte temporary restraining order, prohibiting him from, inter alia, committing acts of family
violence; communicating directly with Maria DeLourdes Torres,[1] his
wife, in a harassing or threatening manner; and going within two hundred (200)
yards of Maria’s place of employment, White Acres Good Samaritan Retirement
Assisted-Living Facility.

Torres, a Border Patrol agent, testified that
when he received the protective order, he contacted Maria, both by telephone
and text messages.  Torres testified that
Maria returned his call and they agreed to meet at her place of employment
shortly before 6 a.m.  Torres admitted
that he knew the protective order prohibited him from going to her place of
employment and that he immediately contacted Maria once he received the
protective order.  On cross-examination,
Torres again admitted that he read the protective order and contacted his wife,
despite the plain language of the order that he was prohibited from doing so.

Maria told the jury that on April 23, 2010,
at approximately 6 a.m., Torres approached her while she was in her vehicle in
the parking lot at her place of employment. 
She stated that when she pulled into the parking lot, she turned off her
vehicle’s engine and turned to the left. 
She saw a man running in the parking lot, but was unable to recognize
him.  She turned to her right to grab her
lunch and when she was about to exit her vehicle, she saw Torres standing there
trying to open the door.  Maria testified
that she struggled with him, trying to close the door, but that Torres was able
to open the door and enter the vehicle. 
According to Maria, Torres told her to move over into the passenger seat
and forced himself into the driver’s seat.  Maria testified that Torres was armed with his
service weapon during this time.  Maria stated
that Torres drove her to their former family home where he sexually assaulted
her.

Torres testified that when they met in the
parking lot, he spoke with Maria and they agreed to go to their former family
residence to talk.  He told the jury that
while at the home he engaged in consensual sexual intercourse with Maria.

Torres informed the jury that Maria was a
jealous wife, who regularly went through Torres’s phone to see who had been
texting and calling him.  At trial, counsel
for Torres called Torres’s sister, Emma Torres, and attempted to elicit
testimony regarding conversations between Emma and Maria concerning Maria’s
marital problems.  Maria had previously
denied that she was angry when she discovered that Torres had a 21-year old son
from a prior relationship.  Maria also
denied telling Torres’s sister Emma that she was angry and going to get even
with Torres.

When Torres’s counsel asked Maria what she had
told Emma, counsel for the State objected as to hearsay.  Torres’s counsel argued that the response “[g]oes
to impeachment.”  At a bench conference,
counsel for Torres argued that while the testimony might be hearsay, it was
admissible as a prior inconsistent statement to impeach Maria’s testimony.  The trial court sustained the State’s
objection, noting Torres’s exception.

Torres offered a bill of exceptions, including
the testimony from Emma Torres.  Emma
testified that Maria called her and was upset. 
Emma advised Maria to talk to Torres, and in response Maria said that
she “didn’t need [Torres] for anything and that she was going to get him back.”

Torres was indicted for offenses including violation
of a protective order, aggravated assault, aggravated kidnapping, and
aggravated sexual assault.  Following a four-day
trial, the jury found Torres guilty of the lesser offenses of violation of
protective order, a Class A misdemeanor, and assault, a Class C
misdemeanor.  By agreement, Torres was
sentenced to serve one year in the county jail, probated for two years, on the
violation of a protective order conviction and was assessed a $500 fine on the
assault conviction.  Torres timely
appealed.

DISCUSSION

As noted above Torres
raises three issues:  (1) the trial court
violated Torres’s Sixth Amendment right to confront his accuser by disallowing
proper impeachment; (2) the trial court erred when it gave a jury instruction
that allowed less than a unanimous verdict; and (3) Torres’s due process right
to a fair trial was violated by the State’s repeated improper arguments.

Application

In his first
issue, Torres argues that the trial court violated his Sixth Amendment right to
confront his accusers by disallowing proper impeachment of Maria’s testimony.  In other words, he contends that the trial
court improperly limited his cross-examination of Maria.

During a bench
conference, Torres’s counsel made several arguments regarding the admissibility
of the testimony, commencing with “[i]t is hearsay, but hearsay is admissible
if it’s for impeachment . . . you can impeach people with what’s called a prior
inconsistent statement, Judge. And that’s what this is.”  The trial court requested a rule of evidence
in support of his argument, and counsel ultimately responded “Judge, 801(1) is
the Rule that I am going to – among other rules, but that primarily.”[2]  The State argued that the impeachment
material must have been given under oath, pursuant to Rule 38.07.  The trial court sustained the State’s objection.  Counsel for Torres asked the court to note
his exception, arguing that Torres was denied “the right to a fair and
impartial trial and effective assistance of counsel under the 5th, 6th and 14th
Amendments to the United States Constitution, as well as any appropriate
Article or Section under the Texas Constitution.”  The court noted the exception and counsel for
Torres then argued that:

That Rule says if somebody gets on the
stand and testifies and makes a statement under oath, I am entitled to bring in
what’s called a prior inconsistent statement that she made to someone else to
show that she’s not being truthful or whatever impeachment. That’s what that
Rule says.

 

Counsel for Torres made a further
objection, arguing that he was “entitled to show that the complaining witness
under oath lied, and I can do it by showing that she made another statement to
somebody else.”

            In
his brief, Torres argues that the Sixth Amendment to the United States
Constitution and Rule 613(a) of the Texas Rules of Evidence support his
argument that the court erred.  Torres
contends that the trial court’s preclusion of Torres’s questions as to Maria’s
bias and motivation following her discovery that Torres had an adult son,
prohibited Maria from being subjected to the adversarial process, and therefore
“completely undermined” Torres’s ability to present a defense.  He contends that the trial court’s actions
violated his right to confront the State’s chief witness and denied Torres his right
to assistance of counsel.

The State counters
that Torres failed to preserve error because his appellate complaint does not
comport with his trial complaint.  In
addition to arguing that Torres waived any issue under Rule 613 by not
articulating the Rule to the trial court, the State also contends that the
trial court did not abuse its discretion in excluding Emma Torres’s testimony
because it did not qualify as a prior inconsistent statement under Rule 613(a).

While Torres did
not present an argument that referred specifically by number to Rule 613 to the
trial court, thereby potentially waiving his argument, see Loredo v. State, 32 S.W.3d 348, 351 (Tex.App.--Waco 2000, pet.
ref’d)(appellate complaint that limitation on appellant’s cross-examination of
the complainant regarding prior accusations violated Rule 613(b) was not
preserved for appellate review because appellant did not argue to the trial
court that the testimony was admissible under Rule 613(b)), we conclude that
his repeated references to impeachment by a prior inconsistent statement were
sufficient to apprise the trial court of his arguments under Rule 613 of the
Texas Rules of Evidence.  Accordingly,
this issue was preserved for our review.

The State next
argues that Torres failed to lay the proper foundation for the admission of a
prior inconsistent statement under Rule 613 because he did not specifically
tell the witness “the contents of such statement and the time and place and the
person to whom it was made . . . .”  Tex.R.Evid. 613(a).  However,
given her denials, the record is clear that Maria understood the questions
being posed to her and she was aware of the contents of the statement and the
person to whom the statement was made, namely Emma Torres.  It is also clear that Maria understood when
and where the statement was made.  We
find that a sufficient foundation exists for admission of the prior
inconsistent statements.

Standard of Review

The Sixth
Amendment to the Constitution of the United States guarantees the accused in a
criminal prosecution the right to confront the witnesses against him.  Pointer
v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067-68, 13 L.Ed.2d 923 (1965).
 The Confrontation Clause includes the
right to cross-examine a testifying State’s witness and to impeach that witness
with relevant evidence.  See Carroll v. State, 916 S.W.2d 494,
497 (Tex.Crim.App. 1996).  A witness’s
prior inconsistent statements are admissible to impeach a witness.  Garcia
v. State, 871 S.W.2d 279, 284 (Tex.App.--El Paso 1994, no pet.h.).  The rule of admissibility of evidence of
prior inconsistent statements should be liberally construed and the trial judge
should have discretion to receive any evidence which gives promise of exposing
a falsehood.  Id.

While Torres
attempts to frame this issue as a violation of his right under the
Confrontation Clause, necessitating a constitutional review under Tex.R.App.P. 44.2(a), we conclude that
his argument is more appropriately characterized as ordinary trial error, inasmuch
the trial court limited Torres’s ability to cross-examine Maria.  Limitation of cross-examination, absent more,
is non-constitutional error.  See Donnelly v. DeChristoforo, 416 U.S.
637, 646-47, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974)(holding that there is a
meaningful distinction between ordinary trial error and the sort of egregious
misconduct that results in a denial of due process).  Non-constitutional error is disregarded,
unless it affects a substantial right of the appellant.  See
Tex.R.App.P. 44.2(b).  A substantial right is affected when the
error had a substantial, injurious effect or influence on the jury’s verdict.  See King
v. State, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997).  We assess the harm to the appellant, if any,
after reviewing the record, although an appellant has no burden to show harm
under Rule 44.2(b).  See Johnson v. State, 43 S.W.3d 1, 5 (Tex.Crim.App. 2001); Johnson v. State, 967 S.W.2d 410, 417
(Tex.Crim.App. 1998)(a criminal conviction should not be reversed for non-constitutional
error under Tex.R.App.P. 44.2(b)
if the appellate court, after examining the record as a whole, has fair
assurance that the error did not influence the jury, or had but a slight
effect).

We review a trial court’s limitation of cross-examination
of a witness for an abuse of discretion. 
Walker v. State, 300 S.W.3d
836, 843 (Tex.App.--Fort Worth 2009, pet. ref’d).  A trial court abuses its discretion if it
acts without reference to any rules or guiding principles, Montgomery v. State, 810 S.W.2d 372, 380 (Tex.Crim.App. 1990), or
if its ruling goes beyond the zone of reasonable disagreement.  Walker,
300 S.W.3d at 844.  While a defendant has
a constitutional right to cross-examine a witness, the trial court maintains
broad discretion to impose reasonable limits on that cross-examination.  See
Lopez v. State, 18 S.W.3d 220, 222 (Tex.Crim.App. 2000).  Defendants are generally entitled to
cross-examine a witness by inquiring into any area which is reasonably
calculated to show a witness’s motive, bias or interest in testifying.  Carroll
v. State, 916 S.W.2d 494, 497 (Tex.Crim.App. 1996).  However, the extent to which a defendant
might cross-examine a witness to establish bias rests within the sound
discretion of the trial court.[3]  Ramirez
v. State, 976 S.W.2d 219, 223 (Tex.App.--El Paso 1998, pet. ref’d).

Torres properly
laid the foundation for Emma’s testimony and the necessary predicates were met.
 The evidence was relevant to show
Maria’s bias and should have been allowed.

However, our
review of the entire record shows that the trial court’s failure to allow
Torres to effectively impeach Maria as to this one issue did not contribute to
either the conviction or punishment.  Obviously,
the jury chose not to believe the majority of Maria’s testimony as it was
entitled to do.  See Wesbrook v. State, 29 S.W.3d 103, 111 (Tex.Crim.App. 2000)(“The jury is the exclusive
judge of the credibility of witnesses
and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile
conflicts in the evidence.”).  It is
apparent by the jury’s verdict that Torres successfully challenged Maria’s
credibility and weight of the evidence presented by the State.  Torres was acquitted on felony charges of
aggravated kidnapping, aggravated sexual assault, and felony assault and was
convicted of misdemeanor offenses of violation of a protective order and
assault.  The verdict is supported by Torres’s
own admissions.

We find, after a
review of the entire record, that the trial court’s non-constitutional error
did not affect Torres’s substantial rights and did not influence the jury’s
verdict.  Torres’s first issue is
overruled.

Error in jury instruction

Next, Torres
alleges that the trial court committed error when it provided a jury
instruction that allowed a conviction on a less-than-unanimous jury verdict.

Without objection
from Torres, the trial court gave the following instruction to the jury:

As to violation of a
protective order:

 

‘If you find from the evidence beyond a
reasonable doubt that on or about the 23rd day of April, 2010, in El Paso
County, Texas, the defendant, Eduardo Torres, knowingly or intentionally
communicated directly in a threatening or harassing manner with Maria Torres,
or went to or near the place of employment or business of Maria Torres, then
you shall find the defendant, Eduardo Torres, guilty of violation of a
protective order,’ signing Verdict Form B.

 

Torres argues that
he was charged with violation of a protective order by making threatening phone
calls, and by going to a prohibited location, therefore, because the jury was
charged in the disjunctive, Torres was not ensured that the jury unanimously
determined that he committed an illegal act. 
Torres contends that violation of the protective order by communicating
with Maria and violation of a protective order by going near Maria’s place of
employment are separate and distinct offenses. 
Torres adopts the argument in Dolkart
v. State, 197 S.W.3d 887 (Tex.App.--Dallas 2006, pet. ref’d), that
different statutory subsections separated by an “or” are indicative that any
one of the proscribed conduct provisions constitutes an offense.  See
Dolkart, 197 S.W.3d at 893-94.

Jury unanimity is
required in all criminal cases.  Ngo v. State, 175 S.W.3d 738, 745
(Tex.Crim.App. 2005).  But while jury
unanimity is required on the essential elements of an offense, the jury
generally is not required to return a unanimous verdict on the specific method
of committing a single offense.  Landrian v. State, 268 S.W.3d 532, 535
(Tex.Crim.App. 2008); Jefferson v. State,
189 S.W.3d 305, 311 (Tex.Crim.App. 2006); Ngo,
175 S.W.3d at 747 n.32.  If the statute
which forms the basis of the jury charge lends itself to a disjunctive
interpretation, then the jury need not decide unanimously how the defendant
committed the crime.  See Schad v. Arizona, 501 U.S. 624, 649-51,
111 S.Ct. 2491, 2506-07, 115 L.Ed.2d 2555 (1991); Landrian, 268 S.W.3d at 535 (“The jury must agree that the
defendant committed one specific crime. That does not mean, however, that the
jury must unanimously find that the defendant committed that crime in one
specific way or even with one specific act.”).

We first examine
the statute at issue.  See Valdez v. State, 218 S.W.3d 82, 84
(Tex.Crim.App. 2007)(the question of what the jury must be unanimous about is
determined by the legislative intent of the particular statute).  As the Court of Criminal Appeals noted in Huffman v. State, 267 S.W.3d 902, 905-6
(Tex.Crim.App. 2008), the key examination is the “focus” of the statute:

We use grammar and we look to other
factors bearing on whether different legal theories constitute the ‘same’
offense or ‘different’ offenses, but those tools seem useful mainly as an aid
to determining focus.  The focus or ‘gravamen’
of the offense seems to be one of the best indicators of the allowable unit of
prosecution prescribed by the legislature.  If the focus of the offense is the result—that
is, the offense is a ‘result of conduct’ crime—then different types of results
are considered to be separate offenses, but different types of conduct are not.
On the other hand, if the focus of the offense is the conduct—that is, the
offense is a ‘nature of conduct’ crime—then different types of conduct are
considered to be separate offenses.  Some
offenses, such as capital murder, may contain both result of conduct and nature
of conduct elements, and the question becomes which aspect of the statute
predominates, or possibly whether both aspects are equally important for
determining the separateness of offenses.

There is a third kind
of focus that we have not yet discussed, and which has not been addressed in
this area of the law: ‘circumstances surrounding the conduct.’  If ‘circumstances surrounding the conduct’ is
the focus of the offense, then under a focus-based approach to determining
separateness of offenses, different types of conduct could establish alternate
methods of committing the same offense rather than different offenses, so long
as the circumstances surrounding the conduct are the same.

 

Huffman, 267 S.W.3d at 907.

 

The Texas Penal
Code provides, in pertinent part, that a violation of a protective order can be
established as follows:

(a)   
A person commits an offense if, in violation of .
. . an order issued under . . . Chapter 83, Family Code, if the temporary ex
parte order has been served on the person . . . the person knowingly or
intentionally:

 

(1) commits family violence or an act
in furtherance of an offense under Section 22.011, 22.021, or 42.072;

 

(2) communicates:

 

(A) directly with a protected
individual or a member of the family or household in a threatening or harassing
manner;

 

(B) a threat through any person to a
protected individual or a member of the family or household; or

 

(C) in any manner with the protected
individual or a member of the family or household except through the person's
attorney or a person appointed by the court, if the violation is of an order
described by this subsection and the order prohibits any communication with a
protected individual or a member of the family or household;

 

(3) goes to or near any of the
following places as specifically described in the order or condition of bond:

 

(A) the residence or place of
employment or business of a protected individual or a member of the family or
household; or

 

(B) any child care facility, residence,
or school where a child protected by the order or condition of bond normally
resides or attends . . . .

Tex.Penal
Code Ann. § 25.07(a)(West Supp. 2012).[4]

            The
State contends that the “focus” of Section 25.07 is whether a defendant
violates a protective order, which constitutes the circumstance that defines
the unlawfulness of the defendant’s conduct. 
The States cites Small v. State,
809 S.W.2d 253, 256 (Tex.App.--San Antonio 1990, pet. ref’d)(stating that “the
gist” of Section 25.08, the predecessor statute to Section 25.07, was that the
defendant intentionally or knowingly acted in violation of a protective order),
in support of this interpretation.  We conclude
that the gravamen of Section 25.07, is the “result” rather than the “nature” of
Torres’s conduct.  See Avilez v. State, 333
S.W.3d 661, 670 (Tex.App.--Houston [1st Dist.] 2010, pet. ref’d)(“A conviction
for violation of a protective order requires proof of a protective order issued
under Chapter 85 of the Family Code and proof that the defendant (1) one time,
(2) intentionally or knowingly violated that order, (3) by committing family
violence or another specified action, by communicating with or threatening a
protected person, or by going to or near the home or workplace of a protected
person.”); Harvey v. State, 78 S.W.3d
368, 368-69 (Tex.Crim.App. 2002)(“A person commits the offense of violation of
protective order if, ‘in violation of an order issued under [one of certain
provisions of the Family Code or Code of Criminal Procedure], the person
knowingly or intentionally commits family violence’ or performs another
prohibited act.”).

            We
find the instant case analogous to Patton
v. State, 835 S.W.2d 684 (Tex.App.--Dallas 1992, no pet.).  In Patton,
the defendant was charged with four violations of a protective order, and was
found guilty of three of those allegations. 
Id. at 685.  One of the counts of the indictment alleged
that the defendant “did then and there knowingly and intentionally communicate
by telephone with [wife] in a threatening or harassing manner and did go to her
business located at [address], Dallas, Texas, to wait for her to leave.”  Id.
at 686.  The court of appeals noted that
there was enough evidence to support the defendant making threats against the
protected party, but insufficient evidence to support a finding beyond a
reasonable doubt that he went within 500 feet of her place of employment.  Id.  The court of appeals noted:

An information that charges commission
of an offense by more than one method is sustained by proof of any one of the
methods alleged.  Evidence of all methods
alleged may be offered, and proof of one method is sufficient to sustain a
conviction.  The State could allege that
Husband committed the offense by making threatening or harassing telephone
calls to Wife and by going within 500 feet of her place of employment and could
obtain a conviction by proving only that Husband made the threatening or
harassing calls to Wife at work.

 

Id.
at 686-87.  [Citations omitted].

The court of
appeals determined that because there was sufficient evidence to support a
finding that the defendant made threatening phone calls to the victim at her
place of employment, the evidence was sufficient to support his conviction of
the charge in the indictment.  Id. at 687.

We find Torres’s
reliance on Dolkart distinguishable
from the facts of this case, given that the Dolkart
court was reviewing different forms of assault, ultimately finding that the
different subsections of Texas Penal Code § 22.01(b) and (c) focused on different
forms of conduct: one of causing bodily injury, the other of engaging in
threatening behavior.  Dolkart, 197 S.W.3d at 893.  The offense complained here is a violation of
a protective order.  The conduct
necessary to support a finding of a violation of a protective order here may be
found in the alternative.  Torres’s
argument that because the two acts claimed to have violated the protective
order are found in separate sections of the Texas Penal Code, they are therefore
intended to punish two separate acts (the act of going to a prohibited place
and the act of threatening via communication) is rejected.  The underlying purpose of Section 25.07 is
violation of a protective order.  Jury
unanimity as to how Torres violated
the protective order is not required. 
Jury unanimity that he
violated a protective order is what is required.

            Because,
as he acknowledges, Torres did not object to this portion of the jury charge,
we must first determine whether the charge as submitted to the jury was
erroneous.  If so, we then analyze his
complaint under the standard set out in Almanza
v. State, 686 S.W.2d 157 (Tex.Crim.App. 1984).  Allen
v. State, 253 S.W.3d 260, 264 (Tex.Crim.App. 2008), citing Olivas v. State, 202 S.W.3d 137, 143-44 (Tex.Crim.App. 2006)(citing
Almanza v. State, 686 S.W.2d 157
(Tex.Crim.App. 1985)(op. on reh’g)).  Under Almanza,
unobjected-to jury charge error will not result in reversal of a conviction in
the absence of “egregious harm.”  Almanza, 686 S.W.2d at 171.  The record must reflect that the defendant
suffered “actual harm,” not just “theoretical harm,” due to the jury
instruction error under the Almanza
standard.  Id. at 174.  In determining
whether there was “egregious harm,” we consider the record as a whole,
including the entire jury charge, contested issues, the weight of probative
evidence and the arguments of counsel.  Id. at 171.

            A
review of the record as a whole indicates that Torres violated the protective
order by going within two hundred yards of Maria’s place of business.  In fact, Torres testified that he went there
after phoning Maria, even though he knew that both the communication itself and
going to her place of employment constituted violations of the protective
order. 
This admission alone is sufficient to support the jury’s finding that
Torres violated the protective order when he “went to or near the place of
employment or business of [Maria’s] . . . .” 
We find no actual or egregious harm to Torres as a result of the
language of the jury charge.[5]
 Torres’s second issue is overruled.

Improper jury arguments

The final issue
presented by Torres is that the State violated his due process rights by its
“continued use of manifestly improper argument” during closing argument.  Torres argues that the State’s error is a
constitutional error, such that this Court must reverse unless we determine
beyond a reasonable doubt that the error did not contribute to the conviction
or punishment.  Tex.R.App.P. 44.2(a); Chapman
v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).  Specifically, Torres directs us to the
following exchange:

The State:  Extraneous offense: the only reason they got
brought up is because the defense brought them up.  Rules of evidence forbid us from doing –

 

Defense Counsel:  Objection Your Honor.  Arguing outside the record. 

 

The Court:  Overruled. 

 

The State:  The Rules of Evidence prevent us from doing
anything. We’re here to prove to you what happened on April 23rd.  I don’t care what happened on April 10th.  I don’t care what happened on October 14th,
but if the issue is brought up, I don’t want to leave you with a false
impression.  I wanted you to have the
whole story.  That’s why I had Brenda
testify.  That’s why I had Geraldine
testify to what they saw, just to give you the entire story.

Now he says that those
cases were declined because its impossible to prove that I could have brought
evidence that showed that he was arrested of [sic] family violence or something
like that.  I couldn’t have done that
even if I wanted to.  The Rules of Evidence
prevent me from doing so. 

 

Defense Counsel:  Objection Your Honor.  That is a misstatement of the law.  It is outside the argument, and it leaves a
false impression in the minds of the jury that he has no access to those things
and that they can’t be presented. 

 

The Court:  Overruled.

 

            Counsel
for Torres then touched on each of the extraneous offenses, including the
evidence the State used in attempting to establish each offense.  Counsel returned to these offenses later in
his argument, attempting to establish that because no charges were accepted in
an earlier allegation of domestic violence, that “two or three weeks later” Maria
made up the second instance of an alleged extraneous offense.  As counsel for Torres noted, “[a]nd the State
of Texas never ever brought you any information – and that’s in their reserve –
that he [Torres] was ever arrested, convicted or charged with what we call
‘extraneous offenses,’ okay?”  Obviously,
counsel was attacking Maria’s credibility.

During its
rebuttal, the State also addressed the extraneous offense and credibility issue
raised by Torres.  Specifically, counsel
for the State made the following initial argument:

So, there’s a part in here about
extraneous offenses. And Mr. Quijano is right. 
We’ve got to prove the extraneous offenses proof beyond a reasonable
doubt.  And he says ‘Let’s say you
figured out that he’s lying and you believe that he really did beat his wife,
right, that doesn’t mean he lied about everything else.’

But when it comes to Maria
– when it comes to Maria, ‘She made false reports on that day.  She made false reports on this day, so she
must have made a false report on this third date of April 23rd.’  Double standard, don’t you think? Kind of
interesting.

 

Following this exchange, counsel
for Torres objected as noted above.

Torres contends
that the arguments made by the State were equivalent to the prosecutor
conveying to the jury that he possessed specialized knowledge about a contested
factual matter.  He notes that a
prosecutor may not use closing argument to get evidence before the jury that is
both (1) outside of the record and (2) prejudicial to the accused.  Torres contends that “the State’s arguments
were designed to arouse the passion and prejudices of the jury and as such were
highly inappropriate.”  Torres believes
that the State’s arguments had a severe prejudicial effect and that, without
the “inflaming argument by the State, the jury would not have found beyond a
reasonable [sic] that [Torres] was guilty of the offenses charged.”

There are four
areas which are properly included in jury argument:  (1) summation of the evidence presented at
trial; (2) reasonable deductions drawn from the evidence; (3) answer to
opposing counsel’s argument; and (4) a plea for law enforcement.  Guidry
v. State, 9 S.W.3d 133, 154 (Tex.Crim.App. 1999); Brown v. State, 270 S.W.3d 564, 570 (Tex.Crim.App. 2008).

Torres asserts
that the prosecutor engaged in improper jury argument by alluding to the
extraneous offenses and that this argument was outside of the record.  However, both Torres and the State presented
evidence of other accusations of family violence against Torres.

The record is
clear that Torres used the extraneous offense evidence in his closing argument
in an attempt to discredit the testimony of Maria.  The State’s discussion of this evidence was
in direct response to the arguments made by Torres.  As such, the State’s response falls within
the allowed scope of permitted jury argument as an answer to opposing counsel’s
argument.  Brown, 270 S.W.3d at 570; Chapman
v. State, 349 S.W.3d 241, 247 (Tex.App.--Eastland 2011, pet.
ref’d)(response to opposing counsel’s argument relating to extraneous offenses
allowed where prosecutor was responding to argument made by defense counsel).

Furthermore, there
was no evidence that the extraneous offense evidence referred to by either
Torres or the State was somehow outside of the record.  At trial, when the evidence was presented by
the State, Torres objected on the grounds that the State was attempting to
introduce specific acts of misconduct against the parties’ children, and not to
show that Torres acted in conformity with these acts.  Torres continued to argue against the
introduction of the evidence, and ultimately the trial court sustained Torres’s
objection and limited the State to presenting evidence regarding the two
incidents which had been raised by Torres in his case-in-chief.  There is no evidence that the prosecutor’s
statements were a misstatement of the law or were outside the record.  We do not find that the prosecutor’s remarks
were inappropriate.  Torres’s final issue
is overruled.

CONCLUSION

Having overruled each of Torres’s issues, the
judgment of the trial court is affirmed.

 

 

December
5, 2012

                                                                        CHRISTOPHER
ANTCLIFF, Justice

 

Before
McClure, C.J., Rivera, J., and Antcliff, JJ.

 

(Do
Not Publish)











[1]
Because Appellant and the complaining witness have the same surname, we will
refer to Maria DeLourdes Torres as “Maria.”





[2]
At trial, Torres’s counsel did not specify which subsection of 801(1)
applied.  The State contends that its interpretation
is that Rule 801(e)(1) was applicable. 
We agree that this is a reasonable interpretation of the Rule asserted
in the record.





[3]
We also note that a defendant does not have an
absolute constitutional right to impeach the general
credibility of a witness
in any fashion he chooses.  See Hammer v. State, 296 S.W.3d 555, 562 (Tex.Crim.App. 2009).  While the Confrontation Clause guarantees an
opportunity for effective cross-examination, trial courts have the discretion
to limit cross-examination as inappropriate for any number of reasons.  Carpenter v. State, 979 S.W.2d 633, 634 (Tex.Crim.App. 1998), citing Delaware v. Van
Arsdall, 475 U.S. 673, 679,
106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); Smith v. State, 352 S.W.3d 55, 64 (Tex.App.--Fort
Worth 2011, no pet.).





[4]
The definition section of the jury charge tracks the language of Section
25.07(a)-(b).





[5]  Torres argues that the jury had difficulty in
reaching their decision.  However, the
record does not reflect what sort of difficulties there may have been.  Absent evidence identifying such
“difficulties,” we will not substitute our judgment for that of the jury,
particularly in light of the other, uncontroverted evidence of a violation of the
protective order, including Torres’s own admissions, as noted above.